IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | Case No.: 1:06CR00114-01ML |
| MARCUS TRIMBLE | ) | |
| Defendant | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO HAVE RESTITITON ORDER DEFERRED**

Now comes the United States of America, by and through its undersigned attorneys, and objects to Defendant's Motion to Have Restitution Order Deferred and respectfully requests that the Court deny the Motion.

The Defendant, Marcus Trimble, Bureau of Prisons (BOP) Registration No. 05811-070, is a federal inmate currently housed by the BOP at the United States Penitentiary (USP) Canaan at Waymart, Pennsylvania, Oregon. Defendant alleges in his pro se motion that the Bureau of Prisons has forced him to pay his restitution through the Inmate Financial Responsibility Program (IFRP) and in so doing has improperly required Defendant to make restitution payments without lawful authority.

In his motion, Defendant asserts that he is unable to pay Court-ordered restitution because he is incarcerated. (Def.'s Mot at 1). He claims that he is being forced "to pay either monthly or quarterly in the amount that satisfies the B.O.P. ($25) minimum." (Id. at p. 2.). Defendant states that the Court "established that [he] does not have the ability to pay a fine." (Id.. at p. 2. ). Defendant states that "he has no one on the outside to help him" and notes that he "has two small children who need things." (Id. at p. 3.)

Defendant requests that the Court "defer his payments until his release . . . ."; that the

Court "instruct the B.O.P., that his restitution is deferred and that he is no longer to participate in the IFRP; or in the alternative, that the [C]ourt "instruct the BOP that Defendant is to pay only $25.00 quarterly...." (Id. at 3). Citing to non-binding authority, United States v Johnson, 48 F.3d 806 (4th Cir. 1995) and United States v Overholt, 307 F.3d 1231 (10th Cir. 2002), Defendant contends that the Court improperly delegated its authority to set the timing and amount of restitution payments to the BOP.

The Government contends that the BOP complies with the regulations relating to the Inmate Financial Responsibility Program (IFRP) and denies that Defendant is "forced" to participate. The Government further contends that the Court's judgment allows the BOP to enter into a voluntary IFRP plan with Defendant to collect restitution in the amount of at least $25.00 per quarter; and in assisting Defendant develop a IFRP plan, the BOP is not exercising exclusive judicial authority. Rather, the BOP is merely using the IFRP to collect the payments that the Court ordered as due immediately. See Bramson v. Winn, 2005 WL 1399321 (1st Cir. 2005).

## BACKGROUND

On December 5, 2006, Defendant pleaded guilty to Counts I - III of the above-referenced superceding indictment charging him with Bank Robbery, in violation of Title 18 U.S.C. §2113(a). No plea agreement was filed.

Pursuant to Title 18, U.S.C., §3571, the maximum fine is $250,000 for each count. According to the sentencing guidelines, the fine range for Defendant's offense is from $10,000 to $100,000, (§5E1.2(c)), the Fine Table). On February 23, 2007, the Court sentenced Defendant to 77 months' imprisonment to be followed by a period of 3 years of supervised release. As a special condition of his imprisonment, the Court recommended to the Bureau of Prisons that Defendant, when eligible, be considered for participation in the intensive substance-

abuse treatment program.

In addition to the $300 mandatory special assessment, the Court ordered that Defendant pay restitution, due immediately, in the amount of $8,882. Finding that Defendant did not have the ability to pay interest, the Court waived the interest requirement on the restitution.[1] The Court did not impose a fine. The Court set the payment schedule as due immediately, providing that:

> "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, **payment of criminal monetary penalties is due during imprisonment.** All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court." (emphasis added)

(A copy of the Order of Judgment and Commitment is attached as Exhibit A.)

Defendant did not appeal his sentence.

Defendant has made no payments towards either the assessment or the restitution. As of today's date, the principal balance of Defendant's fine is $9,182.00.

Defendant began his incarceration on March 13, 2007. (See Exhibit B, Declaration of John E. Wallace, Attachment A, p. 001 (page numbering in upper-left corner)). After brief "holdover" periods at MDC Brooklyn and USP Lewisburg, Defendant arrived at USP Canaan on April 24, 2007. (See Wallace Declaration, Attachment A, p. 003 Inmate Data as of 4-24-2008 ). Since he has been held since his arrest on September 22,2 006, Defendant received credit for time served. (Id.). Assuming he is granted all remaining Good Conduct Time ("GCT") available to him under 18 U.S.C. § 3624(b), his projected statutory release date on this docket is May 4, 2012. ( Id.). In the event that all of his GCT is disallowed, his full term expiration date is

---

[1] Defendant states in his motion that "The Court also ordered upon release the interest would start building on the restitution" (Page 1 at ¶ 2). However, Page 5 of the Judgment expressly states that the interest requirement is waived for the restitution. Therefore interest will not accrue.

February 18, 2013, (Id).

Defendant completed admission and orientation classes on May 3, 2007, and he thereafter worked in general maintenance, on the landscaping crew, or as an orderly on the compound. (Id. at Att. B). From September to December 2007, Defendant worked in the education department at USP Canaan. (Id.). At his request, Defendant was transferred from education back to the landscaping crew on December 18, 2007. On December 31, 2007, Defendant received an incident report and was later sanctioned by USP Canaan's Disciplinary Hearing Officer ("DHO"). (See Wallace Declaration, Attachment C.)

Although Defendant has filed nine (9) formal administrative grievances[2] while imprisoned (See id. at Att. D), he has not brought an administrative challenge to the IFRP.[3] See also James v. Quinlan, 866 F.2d 627, 628-29 & n.1 (3d Cir. 1989) (describing the IFRP).

According to BOP records, Defendant was offered the opportunity to participate in the IFRP, with a withholding in the amount of $25 per quarter being directed to pay his restitution. Defendant refused participation. (See Inmate Financial Plan, Attachment E to the Declaration of John E. Wallace, attached as Exhibit B). Accordingly, Inmate Defendant was placed on "refused status." (Id. at p.3.)

Admittedly, there are disadvantages for inmates who refuse to participate. See § 545.11(d). "IFRP refuse" status inmates may not receive a travel furlough. They "may not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay . . . ." An IFRP refuse inmate: is relegated to the lowest housing status, may not work outside the secure perimeter, may not work in UNICOR, will not be placed in any community-based

---

[2] *See* 28 C.F.R. 542 *et seq*.

[3] The federal regulations concerning the FRP are set out at 28 C.F.R. §§ 545.10-.11.

programs, may not spend more than $25 per month in the commissary, will not receive an incentive for participation in residential drug treatment programs, and will not receive a release gratuity. (*See* IFRP Program Statement attached as Exhibit C, at *.d , p.11.)

## ARGUMENT

### I. The defendant's claims that he is unable to pay the Court ordered restitution while incarcerated, and that he is "forced" to participate in the IFRP lack merit.

Inmate Defendant asserts that he is unable to pay Court-ordered restitution because he is incarcerated. (Def.'s Mot. at 1). However, his trust fund account record belies his contentions that he is entirely without funds or support. His trust fund account statement from November 2007 through April 18, 2004, shows that Defendant earned $39.49 in inmate pay. He has spent $183.02 in the commissary, and he has spent $43 on telephone charges. Defendant has received $270 through money orders or wire transfer through Western-Union. (See Wallace Declaration, Attachment f.). Defendant's claim that he has no outside support is simply not true. Likewise, Defendant's reference to his two small children "who need things," appears to be included more to garner sympathy from the Court, than to bolster his argument regarding his inability to pay the Court ordered restitution.

Moreover, Defendant cannot rely on his incarceration as precluding his ability to pay the Court ordered restitution. The IFRP was implemented to ensure that all sentenced inmates develop a financial plan for meeting Court-ordered and other legitimate financial obligations, including, in many cases, payments to victims and child support. According to the IFRP Program Statement each inmate is assisted by a unit manager in developing a financial plan for meeting those legitimate financial obligations at initial classification. Ordinarily, under the guidelines, the inmate's specific obligations, institution resources, and non-institutional (community) resources are all considered in determining an inmates ability to pay and setting the

scheduled payment amount.

Depending on an inmates work assignment, the IFRP establishes an inmate's minimum payment schedule, which varies from $25.00 per quarter to 50% of an inmate's monthly pay. Wages in the amount of $75.00 per month are excluded from the payment computation and placed in an inmate's trust account trust fund account. Any money remaining in an inmate's account after subtracting the minimum payment schedule and the $75.00 per month exemption may be considered for IFRP payments. Payments made through IFRP may be applied to obligations specified in the Judgment and Commitment Order as well as other State or local Court obligations, including orders for child support.

Participation in the IFRP, although highly encouraged, is not mandatory. Inmates who refuse to participate in the IFRP are placed in "refusal status" and are precluded from receiving certain benefits. See 28 C.F.R. § 545.11(d). "Refusal status"is not a punitive category, and placement in this category will not result in the imposition of inmate discipline. See 28 C.F.R. § 545.10, et seq. An inmate's refusal to participate in the IFRP will result in the receipt by the inmate of not more than maintenance-level pay, removal from UNICOR, limitation of commissary privileges, and ineligibility for placement in a community-based program. See 28 C.F.R. § 545.11(d)(3), (5), (6), and (7)..

Additionally, inmates may receive temporary exemptions from participation due to certain circumstances such as medical or psychological restrictions, or where an inmate is unable to secure employment or advance beyond maintenance pay due to conditions beyond the inmate's control. The IFRP may also allow temporary exemptions in other special circumstances.

Accordingly, since the IFRP is designed to assist all inmates meet their Court-ordered obligations based upon the income they earn while incarcerated. Since the program is voluntary,

albeit with disadvantages for those who chose not to particpate[4], and since Defendant is currently not participating, Defendant cannot show that he is being forced to participate in IFRP. Likewise, since each inmate, with the assistance of a unit manager, develops his or her own financial plan, and since prison records reveal that Defendant has resources available in his inmate account, he cannot show that he is unable to pay the Court-orders restitution while incarcerated.

**II. The Court did not improperly delegate its authority to BOP.**

Citing to non-binding authority, Defendant contends that the Court improper gave the BOP too much latitude in managing the IFRP. As the Third Circuit recently noted, there is a split of authority concerning whether a Court must specifically set a schedule of payments of restitution. See United States v. Corley, 500 F.3d 210, 226 (3d Cir. 2007), petition for certiorari filed, (Apr. 14, 2008) (No. 07-10441); cf. United States v. Sawyer, 523 F.3d 792, 2008 WL 942653, at *3 (7th Cir. Apr. 9, 2008) (Nos. 06-1275, 06-1614, 06-4030) (collecting cases). Although the First Circuit appears not to have joined the fray on this specific issue, the government contends that the 7th circuit has the better argument. An inmate's ability to comply with the IFRP is best judged by the unit mangers, case managers, and unit counselors who interact directly with the inmate every day in prison. These individuals work with the inmate through "both for windfalls and [] tighter times." United States v. Cheal, 389 F.3d 35, 53 (1st Cir. 2004).

---

[4] Defendant may wish to avoid the deprivation of benefits resulting from refusal to participate in the IFRP. However these disadvantages are not designed to be punitive, and are not designed to "force" inmates to participate. Rather they are intended to encourage inmates to meet legitimate financial obligations. Likewise, the depravation of benefits resulting from IFRP "refusal status" does not suggest an "atypical or significant hardship" on the inmate which could give rise to due process protection. Sandin v. Connor, 515 U.S. 472, 484 (1995).

Defendant argues that any requirement to pay the restitution through IFRP creates a financial hardship due in part to his incarceration. However, at sentencing, the Court relied on the Presentence Report prepared by the U.S. Probation Office on January 19, 2007 and amended on February 13, 2007. To aid in the Court's decision to impose the fines and interest, the Presentence Report included the Declaration of Defendant Personal Financial Statement.

The Court could have imposed interest on the restitution pursuant to 18 U.S.C. § 3612 (f). However, finding that Defendant did not have the ability to pay, the Court waived interest on the restitution. Additionally, even though United States Sentencing Commission Guidelines provide for a fine in the range of between $10,000 to $100,000 (§5E1.2(c)(3)), the Court did not impose a fine. Pursuant to 18 U.S.C.§ 3663, the Court imposed restitution to victims as defined in the Victim Impact Statement, which was included in the report. The Court set the payment schedule as due immediately.

Page 6 of the judgment expressly provides that

> "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court."

The Code of Federal Regulations (C.F.R.) 545.11(b)(2) sets forth the expectation of participation by federal prisoners in the Inmate Financial Responsibility Program, with allocation of not less than 50 percent of the inmate's pay to the reduction of imposed criminal financial obligations, unless a lower allotment is permitted by the warden of the correctional facility. Failure to participate in this program results in the receipt by the inmate of not more than maintenance-level pay, removal from UNICOR, limitation of commissary privileges, and ineligibility for placement in a community-based program. See 28 C.F.R. § 545.11(d)(3), (5),

(6), (7).

Defendant argues that the Court cannot delegate the authority to set the amount and timing of restitution payments to the BOP, citing, United States v Johnson, 48 F.3d 806 (4th Cir. 1995) and United States v Overholt, 307 F.3d 1231 (10th Cir. 2002). Defendant cannot rely on this case, however, since both the argument and circumstances in these cases are distinguishable from the instant case, and therefore do not apply.

In support of his motion, Defendant relies upon the Court's finding in Johnson that the delegation of the authority to set the amount and time of payments to the B.O.P. or the probation office is "impermissible and in contravention to Article III of the United States constitution, because the authority to impose a sentence including restitution is solely a judicial function." The facts in Johnson, however are markedly different than the instant case. The Johnson court did not address the constitutionality of B.O.P.'s Inmate Financial Responsibility Program, as Defendant seems to imply. Rather, the Johnson court contemplated the questions arising from delegation of the judicial decision making authority to determine the ***amount*** of restitution, the amount of installments, and their timing.

In Johnson, the District Court, at sentencing, attempted delegate to the probation officer, the final authority to determine the amount of restitution and the amount of installment payments, without retaining ultimate authority over such decisions**.** However, in Johnson's order of restitution, the district court in that case ordered that:

> "The Defendant shall make restitution of not less than $6,000.00 but not more than $35,069.10, in such amounts and at such times as may be directed by the Bureau of Prisons and/or the Probation Officer. Restitution payments of not less than $100.00 per month shall be made during the period of supervised release and payments shall be greater if the Probation Officer determines Trimble is capable of paying more."

Here, the Court does not attempt to delegate the authority to either set the amount or

timing of payments without retaining ultimate authority of such decisions.. Rather, the Court imposed restitution in a fixed amount of $8,882, the payment schedule was set to begin immediately, and the Court specifically set provisions for payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program. The Court does not attempt to delegate the final authority to determine the amount of restitution and the amount of installment payments, without retaining ultimate authority over such decisions. Indeed, the Eleventh Circuit found Johnson inapplicable where the Court ordered immediate payment of restitution. See United States v. Frazier, 2005 WL 1684774 (11th Cir., July, 2005), finding that the MVRA requires the Court to establish a payment schedule only if the Court provided for payments in installments. See id. at **2..

Next, Defendant turns to United States v Overholt, 307 F.3d 1231 (10th Cir. 2002), where the defendants in Overholt claimed various errors regarding their sentences, including on several grounds that the restitution was improper and excessive complaining that the district court did not set a payment schedule. In that case, Overholt, received an 87 month sentence. The Presentence Investigation Report, relied upon by the Court to determine Overholt's ability to pay, concluded, as the Court did in Defendant, that while restitution was mandatory, he lacked the ability to pay a fine. The Court, waived the fine and ordered Overholt to pay restitution in the amount of $1,265,078, payable immediately. Defendant's restitution, on the other hand, was ordered in the amount of $8,882, an amount that is within Defendant's reach, even considering an inmate's diminished earnings capacity.

In Overholt, the Court erred in ordering restitution due immediately, since the Court "knew full well that [the defendant] could not immediately pay the full amount of the restitution award." Overholt, at 1255. The Court in Overholt, however, correctly indicated that there is a

split among the circuits as to whether delegating the preparation of a payment schedule to the Bureau of Prisons amounts to unlawful delegation of judicial authority. (Id.).

Defendant's judgment, however, allows the BOP to enter into a voluntary IFRP contract with Defendant to collect restitution since the amount ordered is within his reach, even while incarcerated, and his earning capacity is taken into account by BOP in assisting Defendant to develop a financial plan. Thus, the BOP is not exercising exclusive judicial authority. Rather, the BOP is merely using the IFRP to collect the payments that the Court ordered as due immediately. See Bramson v. Winn, 2005 WL 1399321 (1st Cir. 2005).

Defendant's claim that his Court-ordered financial obligations should not be paid via the IFRP lacks merit. His J&C ordered that he pay a special assessment of $300 and restitution to three victims in the total amount of $8,882 pursuant to the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3664. The J&C specifically states that the monetary obligation shall be due immediately. Additionally, 18 U.S.C. §3664 (f)(B)(2) states that, "[u]pon determination of the amount of restitution owed to each victim, the Court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid,....". 18 U.S.C. §3572(d)(1) states that, "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the Court provides for payment on a date certain or in installments."

Thus, the BOP accurately determined that Defendant is subject to the IFRP in an effort to assist him in paying his Court-ordered fine as soon as possible, since the J&C specifically states that the Court ordered imposition is due immediately. As such, he is subject to voluntary participation in the IFRP to assist him in meeting these Court-ordered financial obligations. To date, Defendant has not made any attempt to pay restitution, and has been placed in IFRP Refuse

status during his incarceration.

The BOP's authority to collect money judgments has repeatedly passed constitutional scrutiny because the IFRP serves valid penological interests, and is consistent with the BOP's authorization under the direction of the Attorney General to provide for rehabilitation and reformation. See Johnpoll v.Thornburgh, 898 F.2d 849, 850 (2d Cir. 1990), cert denied, 198 U.S. 819 (1990)(Compelled participation in IFRP is constitutional); McGhee v. Clark, 166 F.3d 884, 886 (7th Cir.1999); Quinlan, at 630 (3d Cir. 1989); and, Dorman v. Thornburgh, 955 F.2d 57, 58-59 (D.C.Cir. 1992).

Defendant currently has a balance of $9,182 on his Court ordered monetary obligation. Pursuant to 18 U.S.C. § 3664, which is due immediately, and in the absence of any other direction, the sentencing Court has intended for Defendant to pay this obligation "immediately." Thus, Defendant has been correctly subject to the IFRP Program to assist him in meeting this Court-ordered obligation. As previously discussed, the IFRP is a voluntary, constitutional program within the BOP's authority designed to help inmates demonstrate responsibility and meet their Court ordered financial obligations. As such, an inmate's participation, or refusal, in the IFRP does not need to be approved by the sentencing Court. Defendant has refused to participate in the IFRP, has appropriately been placed in refusal status, and is therefore subject to being ineligible to receive certain benefits as set forth in 28 C.F.R. § 545.11.

**III. No Amended Judgment Necessary.**

Defendant requests that the Court amend its judgment to "defer his payments until his release . . . ."; "instruct the B.O.P., that his restitution is deferred and that he is no longer to participate in the IFRP; or in the alternative, "instruct the BOP that the defendant is to pay only $25.00 quarterly...." . Defendant, then is essentially requesting that, he be allowed to refuse

participation in IFRP without subjecting himself to the disadvantages of non-participation.

In the alternative, Defendant is requesting that the Court order that he pay the minimum amount that is already set for IFRP participants. While the government contends that no amended judgment is required, since the BOP need not be notified that Defendant is not required to participate, since participation is already voluntary. .in the event that the Court finds it beneficial to amend the judgment in order to set a specific payment schedule, the government respectfully requests that the following language be incorporated into the amended judgment:

"Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

Payment in full, due immediately. If the full amount due as restitution remains unpaid:

a. While incarcerated, Defendant shall pay, through the Bureau of Prisons Inmate Financial Responsibility Program, $25 per quarter, or 50% of Defendant's monthly prison pay earned per quarter, whichever is greater. If, after considering Defendant's specific obligations and resources, the Unit Manager determines that more or less should be due, the BOP may require Defendant to pay at least such amount, with notice to Defendant, the United States Attorney, and the Court, subject to *de novo* review by this Court at the Court's discretion;

b. While under the supervision of the United States Probation Office, Defendant shall pay at least 25 percent of his earnings per month, starting 60 days after release from the Bureau of Prisons. If, after considering Defendant's economic circumstances and responsibilities, the United States Probation Officer determines that more or less should be due on a monthly basis, the United States Probation Officer may require Defendant to pay at least such amount, with notice to Defendant, the United States Attorney, and the Court, and subject to *de novo* review by this Court.

c. Not later than 30 days after any change occurs, Defendant shall notify the United States Attorney and this Court of any material change in economic circumstances that might affect Defendant's ability to pay restitution, and any change in mailing or residence address.

## Conclusion

Defendant's ability to pay the restitution imposed was considered by the Court at sentencing. Defendant's ability to pay continues to be considered by the Bureau of Prisons, through his participation in IFRP, thus, Defendant's argument that his inability to pay during his incarceration lacks merit and should, therefore be dismissed.

Likewise, since the IFRP is a voluntary program designed to encourage each sentenced inmate to meet his or her legitimate financial obligations, Defendants claim that he is being "forced" to particpate in the program lacks merit, and should also be dismissed.

Further, the Bureau of Prisons' IFRP, in which Defendant was offered the opportunity to participate, is voluntary, and designed to encourage Defendant to meet his legitimate financial responsibilities, again, based upon his ability to pay. The Court correctly set Defendant's monetary obligations as due immediately, and expressly provided for payments to be made through the IFRP. Therefore, the Court did not unlawfully delegate its authority to the BOP. Rather, the BOP is merely using the IFRP to collect the payments that the Court ordered as due immediately For the foregoing reasons, Defendant's Motion to Have Restitution Order Deferred should be denied, and if appropriate, the judgment be amended to incorporate the payment schedule above.

Respectfully submitted,

UNITED STATES OF AMERICA,
Defendant

ROBERT CLARK CORRENTE
United States Attorney

/s/ Milind M. Shah
MILIND M. SHAH
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
401-709-5017 (fax)
Email: milind.m.shah@usdoj.gov

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the 9th day of May, 2008, I electronically filed the within Government's Response to Defendant's Motion to Have Restitution Order Deferred with the Clerk of the United States District Court for the District of Rhode Island, using the CM/ECF System.:

The Response was forwarded to following participant via first class mail:

Marcus A. Trimble
Reg# 05811-070
U.S.P. Canaan
P.O Box 300
Waymart, PA 18472

/s/ Milind M. Shah
MILIND M. SHAH
Assistant United States Attorney